# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

BARBARA SUE CLARK,

     PLAINTIFF,

VS.                         CASE NO.: CV-10-J-2621-S

MICHAEL J. ASTRUE,
Commissioner of Social Security,

     DEFENDANT.

## MEMORANDUM OPINION

This matter is before the court on the record and the briefs of the parties. This Court has jurisdiction pursuant to 42 U.S.C. § 405.  The plaintiff is seeking reversal or remand of a final decision of the Commissioner of Social Security. All administrative remedies have been exhausted.

## Procedural Background

The plaintiff applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") due to diabetes, disc disease in her back, and mental illness with depression and anxiety (R. 103).  The administrative proceedings leading to this action began on April 11, 2007, when the plaintiff filed an applications for DIB and SSI, which were denied (R. 46-59).[1]  The plaintiff requested a hearing, which was

---

[1]For unknown reasons, the applications themselves do not appear in the record. According to defendant, they were unavailable.  See Commissioner's Memorandum (doc. 7), n.1.

held by video conference in front of an administrative law judge ("ALJ"), on August 8, 2007 (R. 27-45).  The ALJ thereafter rendered an opinion finding that the plaintiff was not under a disability (R. 13-23).  The plaintiff's request for administrative review of the ALJ's decision by the Appeals Council was denied on July 27, 2010 (R. 1-3).  The ALJ's decision thus became the final order of the Commissioner of Social Security. *See* 42 U.S.C. § 405(g).  This action for judicial review of the agency action followed (doc. 1).

The court has considered the record and the briefs of the parties.  For the reasons set forth herein, this case is **REVERSED and REMANDED** to the Agency to further develop the record as instructed herein.

## Factual Background

The plaintiff was born July 26, 1954, and quit school in the seventh grade (R. 31-32).[2]  Although the record reflects that the plaintiff last worked in 2006, the ALJ determined the plaintiff's last substantial gainful employment was in 2002, which he found consistent with her allegations of a disability onset date in 2003 (R. 30).  The plaintiff's prior work was as a cashier, which was light and at the low end of semi-skilled, and as a housekeeper, which was medium and unskilled (R. 31).

---

[2]Although the hearing transcript reflects that the plaintiff was born July 26, 1964, the court believes this to be a transcription error, as the plaintiff also testified that she was "55.  54" (R. 31) at the hearing, and all other documentation in the record reflects her year of birth as 1954.

According to the plaintiff she can read, but not big words (R. 32). She does not go to the supermarket if she can get her daughter to go for her because she gets panicky around people (R. 33). She does not like leaving her house, but explained that was because she does not want to bother getting dressed (R. 34). When asked how often each week she goes out of her house, she responded that she has gone a month without leaving her home (R. 34). The plaintiff's grandson brings the mail in to her because she does not want to get out of her house (R. 34). She agreed that she did not want people to see her and she did not want to be around people (R. 35).

The plaintiff testified she has been depressed a long time, and does not want to eat, or to talk (R. 35). When asked what makes her happy, she replied, "I don't know" (R. 36). She does like to see her great-grandchildren, as long as they do not stay to long when they visit (R. 36). The plaintiff explained that when her family comes over and her daughter cooks, "they all start crowding in my kitchen and stuff and I, I just have to get away" (R. 37).

The plaintiff was hospitalized in 2003 because

I had a son get murdered in 2000, and he was my baby and then in 2003, my older son died, and it just seemed like every time I turned around, cops was knocking on my door saying your son's dead.

(R. 38). The younger son was murdered by his father (R. 38). Since then, she has been on a lot of medication, and she can now talk to some people if she is

comfortable around them (R. 38). She stays very tearful (R. 39). She also testified that she has trouble following instructions (R. 40-41).

The ALJ inquired of the Vocational Expert ("VE") as to whether someone of the plaintiff's age, education and past work experience who could do light work, limited by requirements of simple instructions, occasional contact with supervisors, no contact with co-workers or the general public, in an environment that allowed flexible scheduling and where changes were gradually introduced, could perform any jobs as they exist in the local or national economy (R. 42). The VE responded that jobs such as garment sorter, cleaner, and press feeder existed in numbers of about 2,000 in Alabama (R. 42). Plaintiff's counsel asked the VE whether, given the evaluations of plaintiff's treating physicians, such person would be able to maintain regular employment, to which the VE stated no, and the ALJ then commented the same was an inappropriate question for the VE (R. 43-44).[3]

_____

[3]According to the ALJ, the evaluations of plaintiff's treating physicians are medical opinions and hence plaintiff's counsel's question of the VE amounted to a question concerning whether the plaintiff was disabled (R. 44). However, asking the VE to consider the implications of medical opinions regarding physical or mental limitations on an individual's ability to work is not tantamount to an opinion regarding disability. Rather, by definition, a vocational expert's duty is to consider the impact of medical or physical impairments on an individual's ability to perform specific types of substantial gainful employment. *See e.g., Jarrett v. Commissioner of Social Sec.*, 2011 WL 1378108, at *2 (11th Cir. 2001) ("In order for a [VE's] testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.") (quoting *Winschel v. Comm'r of Soc. Sec.*, ―― F.3d ――, 2011 WL 198372, at *3 (11th Cir. Jan. 24, 2011) (quotation marks omitted)).

In a Physical Activities Questionnaire, the plaintiff estimated she could stand five minutes at a time and walk five minutes at a time because of her back, which "hurts all the time I've got a rupsherd (sic) disc in lower back" (R. 121). She further noted she could sit for one hour at a time (R. 121).

The medical evidence in the record reflects that the plaintiff was hospitalized in a locked psychiatric ward in July 2003 due to major depressive disorder, severe, recurrent with psychotic features (R. 156, 167). She was also noted to have Type 2 diabetes, and was non-compliant due to her recent psychosis (R. 156). Her global assessment of functioning ("GAF") was estimated to be 25, with "the highest she had likely been in [the past year] was 65"[4] (R. 156, 167). The plaintiff had been asking both her mother and her daughter to kill her and had become increasingly paranoid (R. 156, 165). The plaintiff was noted to be "one of the most profoundly depressed patients Dr. Vansickle had seen in a long time" (R. 157-158, 166). At discharge, the plaintiff was "quite guarded, but less paranoid" (R. 158). These records reflect that

_____

[4]A score of 21-30 reflects:

**Behavior is considerably influenced by delusions or hallucinations ORD serious impairment in communication or judgment** (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) **OR inability to function in almost all areas** (e.g., stays in bed all day; no job, no home, or friends).

*Diagnostic and Statistical Manual of Mental Disorders*, 4th ed. 2000, American Psychiatric Association, at 34 (emphasis omitted).

the plaintiff had a previous suicide attempt and a ten year history of depression (R. 165, 174-175).

Plaintiff's regular treating physician is Dr. Jerry T. McLane. A February 2005 notation cryptically states that the plaintiff had stopped going to the pain clinic,[5] "3 disc L knee pain, sweeping and mopping, back pain" (R. 199). In March 2005 Dr. McLane noted slight tenderness in plaintiff's lower lumbar region and that her affect was flat (R. 204). The October record states that the plaintiff was followed by both psychiatry and the pain clinic and she seemed to be doing well (R. 200). In December 2005 the records noted the plaintiff was a non-insulin dependant diabetic and suffered from chronic disc problems with pain in her leg and left knee (R. 198). The March 2006 added that the plaintiff had chronic back pain and had been to pain clinics for intermittent neuropathy in her legs and knee pain (R. 196). Records from June and September 2006 reflect the plaintiff complained of increasing back pain with the pain radiating to her left leg (R. 192). Dr. McLane observed that the plaintiff "may well be heading for disability associated with continued back discomfort" (R. 192). In 2007, he noted that plaintiff's back pain lessened since she quit cleaning houses, and she could easily go from a sitting to a standing position (R. 257). He further opined that the plaintiff did not seem to have any physical problem causing her to be

_____

[5]No such records are reflected in what appears before this court.

disabled, other than she could not do heavy housework (R. 257).  Records in 2008

continue to reflect that the plaintiff suffers from chronic back pain, radiating to both

legs (R. 253, 254).  Dr. McLane also questioned whether the plaintiff suffered from

bipolar disorder  (R. 254).  In 2009 he noted plaintiff could no longer clean house,

had problems with shortness of breath, type II diabetes, intermittent pain that radiated

down her legs, and was taking chronic narcotics ( (R. 282).  Dr. McLane opined the

plaintiff could not sit longer than one hour and could not lift more than 25 pounds (R.

282).

The plaintiff is also followed by Dr. Thomas LeCroy, for her psychiatric issues.

His initial assessment of the plaintiff, in December 2004, noted she has suffered from

panic attacks, four to five times a week, since her second son died in 2003, she had

a depressed mood, diminished interest, weight gain, insomnia, agitation, fatigue,

guilt, poor concentration, and low self-esteem (R. 205).  She also suffered from

anxiety (R. 205).  Dr. LeCroy diagnosed the plaintiff as suffering from panic disorder,

depression, diabetes and GERD, and assigned a current GAF of 55[6] (R. 205-206; *see*

[6]A score of 51-60 reflects:

**Moderate symptoms** ( e.g., flat affect and circumstantial speech, occasional panic
attacks) OR **moderate difficulty in social, occupational, or school functions** (e.g., few
friends, conflicts with peers or coworkers).

*Diagnostic and Statistical Manual of Mental Disorders*, 4th ed. 2000, American Psychiatric
Association, at 34.

*also* R. 269-276).  Dr.LeCroy's progress notes are sparse, reflecting only comments as "Better" or "feels OK" (R. 207-208).  In March 2006 they reflect that the plaintiff was having problems with insomnia (R. 211) and in October 2006 and February 2007 she felt depressed (R. 212, 213).  Dr. LeCroy's April 2007 record notes plaintiff is "still "very depressed – little or no interest or pleasure – stating at home" (R. 214). From 2007 and into 2008, Dr. LeCroy noted the plaintiff had much stress and serious insomnia, with a constricted affect and depressed mood (R. 259-262). Although the plaintiff was then noted to "feel OK," in October 2008 Dr. LeCroy informed plaintiff's attorney that he has treated the plaintiff since 2004 and in his opinion her depression and anxiety were of such severity that he supported plaintiff's disability claim (R. 258, 263-264).

Dr. LeCroy completed a residual functional capacities questionnaire for the plaintiff in August 2007 (R. 251-252).  In his opinion the plaintiff suffered from marked limitations of concentration, persistence and pace, ability to respond to customary work pressures, ability to understand and carry out work instructions, and ability to perform repetitive tasks in a work setting; as well as moderate limitations in her abilities to respond appropriately to co-works and supervisors, perform simple tasks, and maintain social functioning.  *Id*.

In June 2007 the plaintiff was sent to Cynthia Neville for a consultative psychological evaluation (R. 216). The plaintiff related that medication did help with symptoms of panic, but not with chronic back pain, and also that she had a hiatal hernia (R. 217). She also reported she cried daily and felt hopeless (R. 217). Her mood was moderately dysphoric and her affect was broad (R. 218). Moderate concentration limitations were noted and the plaintiff stated she was easily overwhelmed (R. 218). Dr. Neville diagnosed the plaintiff as suffering from Major Depressive Disorder, Recurrent, Moderate Severity; Anxiety Disorder, NOS, diabetes, hiatal hernia, and back pain, and noted further that while she did not meet the fill criteria for diagnoses of panic disorder, generalized anxiety disorder, or Posttraumatic Stress Disorder, she did have isolated symptoms of each (R. 219). Dr. Neville believed the plaintiff could benefit from outpatient psychotherapy, but that her symptoms could worsen if plaintiff was confronted with additional stressors (R. 219). In conclusion, Dr. Neville opined that:

> The applicant appeared to possess the cognitive abilities to understand work instructions although her emotional difficulties would probably interfere with her ability to remember and follow through to a moderate degree. Her ability to interact appropriately with coworkers and supervisors or to handle typical work pressures would likely be negatively impacted by her symptoms of depression and anxiety to a moderate degree.

(R. 219-220).

9

The plaintiff was also sent to Dr. Kevin Lasseigne, M.D., for a consultative physical examination.  Although the plaintiff was able to get on and off the exam table, walk and take off her shoes, Dr. Lasseigne noted muscle guarding in plaintiff's lumbar region, loss of lumbar lordosis, and pain to palpation in this area (R. 224). His sole diagnosis was depression (R. 225).

In 2009 Dr. LeCroy completed a second residual functional capacities report, in which he rated the plaintiff as more limited that his previous report.  He noted that the plaintiff had moderate restrictions of daily activities, maintaining social functioning, responding to supervision and co-workers, and performing simple tasks; marked limitations in performing repetitive tasks, understanding and remembering instructions, and deficiencies of concentration, persistence or pace; and extreme limitations in responding to customary work pressures (R. 279-280).

The plaintiff argues that the opinion of the ALJ is not supported by substantial evidence and improper legal standards were applied.  Plaintiff's memorandum at 1. The plaintiff faults the ALJ for rejecting treating physicians' opinions, failing to develop the record, failing to base his residual functional capacity findings on substantial evidence.  In his opinion, the ALJ determined that the plaintiff could perform the full range of medium work, with only restrictions of being required to follow simple instructions, no more than appropriate contact with supervisors and no

interaction with the general public, and a flexible schedule with gradual introduction

of change (R. 19).  Hence, the ALJ concluded that the plaintiff could return to her

past relevant work as a housekeeper (R. 22).

## Standard of Review

In a Social Security case, the initial burden of establishing disability is on the

claimant, who must prove that due to a mental or physical impairment he is unable

to perform his previous work.  If the claimant is successful the burden shifts to the

Commissioner to prove that the claimant can perform some other type of work

existing in the national economy.  *Walker v. Bowen*, 826 F.2d 996, 999 (11th

Cir.1987).

This court's review of the factual findings in disability cases is limited to

determining whether the record contains substantial evidence to support the ALJ's

findings and whether the  correct legal standards were applied.  42 U.S.C. § 405(g);

*Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971); *Wolfe v. Chater*, 86

F.3d 1072, 1076 (11th Cir.1996); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th

Cir.1990).  "Substantial evidence" is generally defined as "such relevant evidence as

a reasonable mind would accept as adequate to support a conclusion."  *Richardson*,

402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59

S.Ct. 206 (1938)); *Miles v. Chater*, 84 F.3d 1397 (11th Cir.1996); *Bloodsworth v.*
*Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983).

In determining whether substantial evidence exists, this court must scrutinize
the record in its entirety, taking into account evidence both favorable and unfavorable
to the Commissioner's decision. *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir.1988);
*Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir.1987). "Even if the Court finds that
the evidence weighs against the Commissioner's decision, the Court must affirm if
the decision is supported by substantial evidence." *Allen v. Schweiker*, 642 F.2d
799,800 (5th Cir.1981); *see also Harwell v. Heckler*, 735 F.2d 1292 (11th Cir.1984);
*Martin v. Sullivan*, 894 F.2d 1520 (11th Cir.1990).

This court must also be satisfied that the decision of the Commissioner is
grounded in the proper application of the appropriate legal standards. *McRoberts v.*
*Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Bridges v.  Bowen,* 815 F.2d 622, 624
(11th Cir.1987); *Davis v. Shalala*, 985 F.2d 528 (11th Cir. 1993). However, no such
presumption of correctness applies to the Commissioner's conclusions of law,
including the determination of the proper standard to be applied in reviewing claims.
*Brown v. Sullivan*, 921 F. 2d 1233, 1235 (11th Cir. 1991); *Cornelius v. Sullivan*, 936
F.2d 1143, 1145 (11th Cir. 1991).  Furthermore, the Commissioner's "failure to ...
provide the reviewing court with sufficient reasoning for determining that the proper

legal analysis has been conducted mandates reversal." *Cornelius*, 936 F.2d at 1145-1146.

When making a disability determination, the ALJ must consider the combined effects of all impairments. *Davis v. Shalala*, 985 F.2d at 533; *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir.1990); *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir.1987). When more than one impairment exists, the plaintiff may be found disabled even though none of the impairments considered alone would be disabling. *Id*. The ALJ must evaluate the combination of impairments with respect to the effect they have on the plaintiff's ability to perform the duties of work for which he or she is otherwise capable. *Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir.1990). Merely reciting that the plaintiff's impairments in combination are not disabling is not enough. *Walker*, 826 F.2d at 1001.

## Legal Analysis

In this case, the ALJ determined that the plaintiff had the residual functioning capacity to perform work at the medium level of unskilled work (R. 19). His justification for this finding includes such observations as that the plaintiff took and passed the written driver's license exam, although she testified this was when she was 16 years old (R. 20, 33). The ALJ included plaintiff's testimony that she did not like to be around people and did not like to go outside in support of his finding of medium

work, and further found this testimony contradicted by her testimony that she was raising her grandson and her daughter frequently visited (R. 20). The ALJ then found that the plaintiff's medically determined impairments could cause her alleged symptoms, but not to the extent her claims of limitations are inconsistent with his residual functional capacity assessment (R. 20). The plaintiff faults these conclusions as not supported by the evidence. The court agrees, and further finds them to be nonsensical.

Given that plaintiff's medical records are replete with findings of chronic back pain, and medical opinions that the plaintiff cannot lift more than 25 pounds nor engage in heavy housework, the ALJ's finding that the plaintiff can return to her past relevant work as a housekeeper and perform work at them medium level simply ignores the medical evidence, and then supports doing so by attempting to find contradictions in plaintiff's testimony about her mental limitations.

No medical opinion supports the limitations, or lack thereof, adopted by the ALJ. No medical opinion regarding the plaintiff's ability to perform medium level, or to sustain the mental requirements to perform any level of work on a regular basis appears anywhere in the record before this court. The opinion regarding plaintiff's mental abilities place her somewhere between moderately and extremely limited in

14

different facets of work related activities.  She was assigned GAF scores between 25 in 2003 and 55 in 2006.

Treating physician opinions are generally entitled to more weight that a consulting physician's opinion.  *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir.1984).  Although the ALJ rejects the opinion of plaintiff's treating psychiatrist in favor of the consultative opinion of Dr. Neville, a psychologist, the court finds Dr. Neville's opinion and Dr. LeCroy's opinion, both formed in 2007, do not contradict each other, as they both found the plaintiff had at least moderate limitations.  However, in his 2009 opinion, Dr. LeCroy found the plaintiff's limitations has increased.  There is no contradiction between these opinions and the ALJ's conclusion otherwise was simply error.[7]  Adding to this error was the ALJ repeatedly ignoring the evidence in favor of non-existent facts that supported his opinion.  For example, the ALJ found the plaintiff could suffer from no more than moderate limitations in the area of social functioning, drawing on the fact that she was raising her teenage grandson (R. 18).  Sadly, the plaintiff's treatment records reflect that this child was in alternative school and the plaintiff had to call the police three times

---

[7]The ALJ's refusal to actually consider any of the mental health experts' opinions is further reflected in the ALJ's opinion where he asserts that Dr. Neville "diagnosed depression and anxiety" (R. 16).  Dr. Neville actually diagnosed "Major Depressive Disorder, Recurrent, Moderate Severity" and "Anxiety Disorder" (R. 219).

because of his behavior (R. 256), and that when her family comes over, the plaintiff retreats to her bedroom to hide (R. 34).

Further compounding his error, the ALJ wholly failed to consider the opinion of Dr. LeCroy or even Dr. Neville in combination with the plaintiff's physical impairments, including the clearly documented medical opinions that the plaintiff suffers from chronic back pain. "An ALJ must make specific and well-articulated findings as to the effect of the combination of impairments when determining whether an individual is disabled." *Davis v. Shalala,* 985 F.2d 528, 534 (11th Cir.1993), citing *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir.1987); *Jones v. Bowen*, 810 F.2d 1001, 1006 (11th Cir.1986); *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir.1984). The Eleventh Circuit has stated, "it is certain that mental and psychological defects can combine with physical impairments to create total disability to perform gainful employment." *Id*., quoting *Bowen v. Heckler*, 748 F.2d at 634 (citing *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir.1980)). Here, the ALJ failed to do so.

Having rejected the opinion of plaintiff's treating psychiatrist, the ALJ failed to even include the limitations found by Dr. Neville, whose opinion he found credible, in his hypothetical to the VE.[8]  Thus, the hypothetical did not reflect all of the plaintiff's limitations as required.  *See e.g., Smith v. Social Security Admin*., 2008

---

[8]The ALJ wholly ignored the testimony of the VE in his decision anyway.

WL 879980, 10 (11th Cir.2008), citing *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999) ("to constitute substantial evidence, the VE's testimony must be based on a hypothetical posed by an ALJ which encompasses all of the claimant's impairments").  The court therefore finds that the hypothetical to the VE was not sufficient for purposes of establishing that the plaintiff could perform a full range of medium work as set forth by the ALJ.  Specifically, the ALJ's questions concerned the ability to perform light work only, and adopted the limitations put forth by the non-treating, non-consulting, state agency physician (R. 21, 42).  Therefore, the court finds the failure to ask the VE proper questions and the failure to consider the VE's testimony constitute further error requiring remand.

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  Absent "good cause," an ALJ is to give the medical opinions of treating physicians "substantial or considerable weight.*"  Winschel v. Commissioner of Social Sec*., 631 F.3d 1176, 1178 -1179 (11th Cir.2011); see also 20 C.F.R. §§ 404.1527(d)(1)-(2), 416.927(d)(1)-(2). Good cause exists "when the: (1) treating physician's opinion was

not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Winschel,* 631 F.3d 1176 at 1178 (quoting *Phillips*, 357 F.3d at 1241). In order to disregard a treating physician's opinion, the ALJ "must clearly articulate [the] reasons" for doing so. *Winschel,* 631 F.3d 1176 at 1179. The fact that the treating physician's opinion is contradicted by a non-examining physician is not good cause for rejecting the treating physician's opinion in favor of the non-examining physician's opinion. *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir.1988) ("The opinion of a non-examining physician is therefore entitled to little weight when it contradicts the opinion of an examining physician").

The ALJ failed to express any reason to disregard the opinion of Dr. LeCroy, other than his notes were "generally difficult to read and without detail" (R. 21). This simply is not the "good cause" envisioned. The ALJ also discounted plaintiff's treating physician's records regarding repeated notations of "chronic back pain" because of the lack of evidence of physical therapy, epidural injections or surgical intervention (R. 20). This ignores the references to plaintiff's treatment at a pain clinic, which records are absent from what was before the ALJ and now this court. The findings of muscle guarding and tenderness are simply not mentioned by the ALJ.

The law requires an ALJ to evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir.1993).  Accordingly, the ALJ must make it clear to the reviewing court that the ALJ has considered all alleged impairments, both individually and in combination, and must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *See Jamison v. Bowen*, 814 F.2d 585, 588-89 (11th Cir.1987); *Davis*, 985 F.2d at 534.  A remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to consider properly. *Vega v. Comm'r*, 265 F.3d 1214, 1219 (11th Cir.2001).

All the medical evidence regarding the plaintiff's mental limitations which is before this court supports a finding that the plaintiff would have difficulty maintaining substantial gainful employment because of limitations from her depression.  However, there is also evidence before the court that the plaintiff may or may not be able to perform sedentary or light level work.[9]  The ALJ's finding of medium level work is wholly unsupported.  No evidence supports the limitations

---

[9]Should the plaintiff be found limited to sedentary work, Grid Rules 201.09 and/or 201.10 would dictate a finding of "disabled."  20 C.F.R. Part 404, Subpt. P, App. 2.  If the plaintiff is limited to light work, she could not be found disabled based on the Grids. *See id.* at 202.10 and 202.11.

19

posited by the ALJ, but there is also not sufficient evidence in the record from which this court can find that the substantial evidence mandates a finding of disability.

The Commissioner has a duty to develop a full and fair record.  *See  Miles v. Chater,* 84 F.3d 1397, 1400-1401 (11th Cir.1996)(The ALJ plays a "crucial role in the disability review process" and has a duty to "develop a full and fair record" and to "carefully weigh the evidence, giving individualized consideration to each claim."); *Lucas v. Sullivan*, 918 F.2d 1567, 1573 (11th Cir.1990).  This did not occur in this case.  The court cannot conclude that the ALJ's finding that the plaintiff can perform a medium level of work is supported by substantial evidence.  Records in evidence at the time the ALJ rendered his decision support a conclusion that the plaintiff does have significant limitations.  In the Eleventh Circuit, it is not appropriate for the Administrative Law Judge, who is not a medical expert, subjectively to arrive at an index of traits which he expects the claimant to manifest at the hearing, and then to deny the claim when such traits are not observed.  *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th  Cir.1982). The Eleventh Circuit has termed this "sit and squirm jurisprudence," and forbids that this method of analysis be used. *McRoberts v. Bowen*, 841 F.2d 1077, 1081 (11th  Cir.1988); *Johns v. Bowen*, 821 F.2d 551, 557 (11th Cir.1987); *Wilson v. Heckler*, 734 F.2d 513, 517 (11th  Cir.1984).  However, the ALJ engaged in just such behavior in making findings which included that plaintiff's

medical records did not support her testimony that she does not leave her home for a month at a time (R. 21), giving little weight to a treating psychiatrist because his progress notes were difficult to read (R. 21), or finding that the plaintiff "is able to interact appropriately with treating and examining physicians" translate into "moderate difficulties" (R. 18) in social functioning.

The failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. *Cornelius*, 936 F.2d at 1145-46.  Given the evidence before this court, the court is unable to determine that the proper legal analysis has been conducted.  As such, this court must reverse the decision of the ALJ.  However, the court is unable to conclude from the evidence before it that the plaintiff is completely disabled, and can perform no substantial, gainful employment.  Therefore, the court will remand this case to the ALJ for a new hearing, including VE testimony to include relevant hypotheticals, further consideration of the evidence, proper application of the law, and any further development of the record, including an attempt to obtain the pain clinic records, deemed necessary for these purposes.

**Conclusion**

Based on the lack of substantial evidence in support of the ALJ's findings, it is hereby

ORDERED that the decision of the Commissioner is **REVERSED** and this case is **REMANDED** to the Agency for further action consistent with this opinion, as set forth herein.

**DONE** and **ORDERED** this the 26th day of April, 2011.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE